J. A. AND C. E. BENNETT v. WINSTON-SALEM SOUTHBOUND RAILWAY COMPANY.

(Filed 8 December, 1915.)

1. **Municipal Corporations—Discretionary Powers—Grading Streets—Railroads—Constitutional Law—Damages.**
    The rule excluding liability of a municipality to an abutting property owner for damages caused to his property by the grading of a street, done within the exercise of its discretionary powers, has no application where the work is done by a railroad company to facilitate its own business, for, though authorized by the city, the railroad company, in so acting, appropriates the property of the private owner and is liable to him to the extent that the value of the property has been diminished thereby, as well as for damages caused by its negligent and unskillful construction.

2. **Same—Delegated Powers.**
    The right conferred upon a municipality to grade its streets without liability to abutting owners, within the proper exercise of its discretionary power, is for the public benefit, and cannot be transferred to a railroad company to do so.for the furtherance of its own business. .

3. **Municipal Corporations—Grading Streets—Railroads—Measure of Damages—Issues.**
    It appearing in this case that a railroad company was appropriating private property to its own use in grading a street of a city for its own purposes, it is held that one issue submitted as to the damages was sufficient, and that permanent damages were recoverable by the abutting owners.

**4. Evidence—Damages—Railroads—Grading Streets—Test of Opinion—Other Lots—Comparative Values.**

In an action to recover damages to plaintiff's lot caused by the defendant grading a street upon which it abutted, a witness testified as to the value of plaintiff's lot, and it is held that the trial court committed no error in permitting him to testify the price he realized from the sale of his own lot as a test of the value of his opinion, there being some evidence of the similarity of the two lots, and of their condition, surroundings and value.

APPEAL by plaintiff from *Devin, J.,* at February Term, 1915, of FORSYTH.

Civil action. This action was brought by the plaintiffs against the defendant and the city of Winston-Salem to recover damages for injury to their lot in said city, caused by the construction of a bridge or a viaduct and the approaches thereto, along Bank Street in said city, and between Liberty and Elm streets. It appears in the case that the defendant railroad company had laid a part of its track across Bank Street at grade, and, desiring to raise the grade of the street, and for that purpose to build the bridge in question and construct the approaches thereto, it obtained permission from the city to do so, upon giving a bond to indemnify it against the damages. The railroad company then proceeded with the work, constructed the bridge, and raised the level of the street in such a way that ingress and egress to the plaintiffs' lot was so obstructed as to greatly impair the value of the property. This was the allegation of the plaintiffs, and there was proof to sustain it, though it was denied by the defendant, which alleged that the work was done by the permission of the city and under its authority, and was also carefully performed according to a correct plan. The case was submitted to the jury upon the following issue:

Has the plaintiffs' property been damaged by the erection of the bridge along Bank Street, as alleged, and if so, in what amount? A. Yes; $2,250.

Judgment was rendered upon the verdict and the plaintiffs appealed, and reserved several exceptions to the rulings and judgment of the court.

*Louis M. Swink for plaintiffs.*
*Watson, Buxton & Watson for defendant.*

WALKER, J., after stating the case: It is apparent from the entire record in this case that the railroad company in constructing the bridge and its approaches was acting in its own behalf and for its own use and benefit, although it had obtained the permission of the city to do the work, and the same was done with its consent, but the work was not done by the city in the exercise of its governmental function, through the defendant, so as to protect the latter from liability except for negligence.

It is well settled with us, and it is very generally held in other jurisdictions, that, unless otherwise provided by the Constitution or statute, the owner of property abutting on a street cannot recover for any damage to his property caused by a change in the grade of the street under proper municipal authority, where there is no negligence in the method or manner of doing the work. *Meares v. Wilmington,* 31 N. C., 73; *Wolf v. Pearson,* 114 N. C., 621; *Jones v. Henderson,* 147 N. C., 120; *Dorsey v. Henderson,* 148 N. C., 423; *Harper v. Lenoir,* 152 N. C., 723; *Stratford v. Greensboro,* 124 N. C., 127; *Jeffress v. Greenville,* 154 N. C., 500; *Hoyle v. Hickory,* 164 N. C., 82; *Hoyle v. Hickory,* 167 N. C., 621; McQuillin Mun. Corp., sec. 1975; 2 Dillon Mun. Corp., sec. 1040.

In *Hoyle v. Hickory,* 167 N. C., 620, this Court said: "It was decided in the former appeal that while plaintiffs could not recover for any detriment to their property which was the result merely of the proper grading of the street, which had been done in the due exercise of the discretionary power of the city to make needed improvements, it being *damnum absque injuria,* yet they could recover for any damage done thereto which was caused by a negligent grading of the street, following the principle as adopted in numerous decisions of this Court," citing many authorities.

This principle, we stated in the same case, has been recognized and enforced since the days of *Chief Justice Kenyon* and *Justice Buller. Mfrs. v. Meredith,* 4 Durnf. & East, 794, 796; *Sutton v. Clark,* 6 Taunt., 28; *Boulton v. Crowther,* 2 Barn. & Cres., 703. The doctrine is almost universally accepted by the State courts of this country. Cooley Const. Lim., 542, and notes. It was affirmed in *Transportation Co. v. Chicago,* 99 U. S., 635; *Smith v. Washington,* 20 How., 135, and *Meade v. Portland,* 200 U. S., 148.

As stated by the Court in the case last cited, it may be thus summarized: The doctrine, however it may at times appear to be at variance with natural justice, rests upon the soundest legal reason. The State holds its highways in trust for the public. Improvements made by its direction or by its authority are its acts, and the ultimate responsibility, of course, should rest upon it. But it is the prerogative of the State to be exempt from coercion by suit, except by its own consent. This prerogative would amount to nothing if it did not protect the agents for improving highways which the State is compelled to employ. This principle of the law is usually made to rest upon the theory that any and all changes of this character in the streets of the town are supposed to have been contemplated, and, therefore, provided for in advance of the improvement and at the time of the original dedication of the street, and any abutting owner acquires and improves his property with full

notice that such changes may be made from time to time. Nichols Power of Em. Dom., secs. 81, 82, and 83; Lewis Em. Dom. (3 Ed.), sec. 134.

Nichols Em. Dom., *supra,* says: "When a highway is raised or lowered in grade so that it may be made safer or more convenient for traveling, the owner is not entitled to compensation. . . . The true reason for the rule is that when a highway is laid out the estimate taken includes the right to grade and construct *then,* or at any future time, in such a manner as the public authorities may deem conducive to safe and convenient traveling." And Lewis Em. Dom., *supra,* says: "When a street or highway is laid out compensation is given once for all, not only for the land taken, but for damages which may, at any time, be occasioned by adapting the surface of the street to the public needs."

This power to further grade and improve the streets of the town is a continuing one, and may be exercised in the legal discretion of the municipal government whenever the public may require it, as will appear from the above cited authorities, and also 1 Elliott Streets and Roads (3 Ed.), sec. 551. This discretion, although it may be a legal one, cannot be interfered with by the courts, except in case of manifest and gross abuse, or when it would be arbitrary and oppressive. *Brodnax v. Groom,* 64 N. C., 244; *Small v. Edenton,* 146 N. C., 527; *Luther v. Comrs.,* 164 N. C., 241, and other cases above cited. This power of the municipal corporation may, of course, be exercised by it through its own agents, who are commissioned or appointed to do the work which may be required, in order to make the improvement in the street. And when the work is done carefully, either by the corporation itself or by it when acting through its agents, the abutting owner has no legal right to redress, and any damage to his property or loss to him by reason of the improvement is considered by the law as *damnum absque injuria*—a loss without injury, the last word being used in the sense of an actionable wrong.

These principles have been very recently discussed by us in *Wood v. Land Co.,* 165 N. C., 367, where the authorities are collected. But the defendant in this case, the railroad company, can take no advantage of them upon the facts as they appear in this record. The city of Winston-Salem was not acting in its corporate capacity, and in the exercise of its municipal authority in raising the grade of Bank Street, solely for the public's use and convenience. On the contrary, the defendant was acting for itself and in furtherance of its own interests, and the mere fact that it had obtained the permission of the city to do the work does not vary the case, or take it out of the principle, so well settled, that private property should not be taken except for a public use, and then only upon just compensation. We presume the railroad company had the right to condemn the plaintiffs' property under its charter, and for

the sake of argument· we will assume this to be true, it being a public-service corporation; but if it has, in a legal sense, taken or appropriated the plaintiffs' property, it is liable to them to the extent that the value of the property has been diminished thereby, and if it has done the work unskillfully and negligently it would be liable to the plaintiffs also for any damage resulting therefrom. The city could not transfer to an individual, or to the *quasi*-public corporation for its own service and profit, this superior and sovereign right which is allowed to be used only for the public benefit. *Brown v. Electric Co.,* 138 N. C., 533; *Stratford v. Greensboro, supra.* The Legislature has no power, itself, to authorize corporations to take or use private property without compensation, and, of course, could not confer such a power upon the city. *Telegraph Co. v. McKenzie,* 74 Md., 36; *Walters v. R. R.,* 120 Md., 644; *Egerer v. R. R.,* 14 L. R. A., 381, and notes; *Muhlker 'v. R. R.,* 197 U. S., 49; *Vanderlip v. Grand Rapids,* 16 Am. St. Rep., 607, and notes; *White v. R. R.,* 113 N. C., 611; *Guano Co. v. Lumber Co.,* 168 N. C., 337 (84 S. E. Rep., 346); *Hester v. Traction Co.,* 138 N. C., 293.

The principle is well expressed in *Reining v. R. R.,* 128 N. Y., 168, where it is said: "We think it cannot, under the guise of exercising this power, appropriate a part of the street to the exclusive, or, practically, to the exclusive use of the railroad·company, so as to cut off abutting owners from the use of any part of the street, without making compensation for the injury sustained." In this particular case, as is shown in the record, the object of making this improvement was to subserve the railroad use, so that it might better control its track and appurtenances, and facilitate the movement of its trains over it. The street, therefore, was subjected to a new burden in favor of this defendant, and this may be done, in the exercise of the power of eminent domain, which belongs not only to the sovereign, but may be imparted to a public-service corporation by legislative enactment, provided adequate provision is made for the compensation of any private owner of property which will be damaged by the exercise of the power. It would be useless to pursue this subject any further, as this power has been so fully considered heretofore by the Court, and its scope and extent clearly defined. We will call special attention, though, to *Brown v. Electric Co., Stratford v. Greensboro,* and *Moore v. Power Co.,* all cited *supra,* where a full discussion of the matter will be found, as well as in several of the other cases cited.

It will be observed that, in this case, there was but one issue submitted to the jury, and that related only to the question of damages and the amount which plaintiffs were entitled to recover. There was no issue involving the question as to the authority of the railroad company to do this work and be immune from liability for damages, unless it was done negligently; but even if such an issue had been submitted, it is so

very clear that it possessed no such right as to practically eliminate that question from the case, and, upon the issue as to damages, the charge of the court was entirely free from error. The plaintiffs were entitled to recover for the diminution in value of property which was caused by the defendant's wrongful act, or by the appropriation of their property to its use, and in respect to works of this kind, which are of a lasting nature, the plaintiffs were entitled to recover permanent damages. *Lloyd v. Venable,* 168 N. C., 531; *Waste Co. v. R. R.,* 167 N. C., 340, and *R. R. v. Mfg. Co.,* 169 N. C., 160.

There is a question of evidence in the case, but we think his Honor ruled correctly in regard to it. The plaintiffs did not attempt to show substantively by the cross-examination of the witness what was the value of their lot as compared with his, but the question was asked, as to what he had realized from the sale of his property, for the purpose of testing the value of his opinion, which had been before elicited by the defendant as to the value of the plaintiffs' lot, which he had estimated at a very low figure, there being, in our opinion, some evidence as to the similarity of the two lots, and their condition, surroundings and value, and at least enough to permit a cross-examination of the witness upon the subject. We do not think that the ruling of the court violated the principle as stated in *Warren v. Makely,* 85 N. C., 12; *Bruner v. Threadgill,* 88 N. C., 361, and *Board of Education v. Makeley,* 139 N. C., 31. The other exceptions are sufficiently covered by our discussion of those which we deem the important and controlling ones in the case.

Before closing this opinion we will call attention to the case of *Waste Co. v. R. R., supra,* as containing a very full discussion of the leading questions in this case, as applied to a state of facts very similar to those which are presented in this record.

After a careful analysis of the case, and a thorough consideration of the points presented by the learned counsel for the defendant, we are convinced that there has been no error committed during the trial.

No error.