Pearson, J.
 

 We think the charge of his Honor was fully as favorable to the defendants, as they had a right to ask. The whole of it is in their favor, except the instruction : “That if, in doing the work, ordinary skill and caution had not been used, and the plaintiff was damaged thereby, she was entitled to recover.”
 

 It is true, his Honor did not instruct the jury, what would amount to ordinary skill and caution ; but no such instruction was asked for ; and the defendants have no right now to except, because it was not given.
 

 Our consideration is, therefore, confined to the single instruction above stated.
 

 His Honor instructed the jury, that the acts of the defendants were lawful, provided they were done with or. dinary skill and caution. He assumed that the defendants, as commissioners, were vested, by the several acts
 
 *77
 
 of the Legislature upon the subject, with full power to cause the grading to be done, and to levy a tax upon the citizens of the town to defray the expense ; and he put the plaintiff’s right to recover, upon the question, whether ordinary skill and caution had been used.
 

 If the defendants had caused the grading to be done with ordinary skill and caution, and, by the erection of a substantial wall as the excavation proceeded, had so managed, as to prevent any caving in of the plaintiff’s lot, so that the damage, if any, would have resulted, not from a want of ordinary skill and caution, but merely from the fact, that, by reason of the grading, the lot was left higher above the level of the street, and, so, was more difficult of access, and, therefore, less valuable, the case would have presented a very grave question; and we are strongly inclined to think with his Honor, that the plaintiff would have been without remedy ; for, as it was lawful for the defendants to do the work,
 
 if it was done in a proper
 
 manner, although the plaintiff was dam* aged thereby, it would be
 
 “damnum absque injuria,”
 
 and give no cause of action. To subject the defendants to an action for exercising in a proper manner power vested in them, by the sovereign authority, for the convenience of the public, would seem to involve an absurdity ; hence if the property of one is made less valuable by being left too high, and that of another is made less valuable by being left too low, the parties must submit to the loss for the convenience of the public ; unless the law, authoris-ing the act to be done, contains some provision for making compensation, as, injustice, it should do, whenever the work, although done in a skilful and proper manner, will be productive of special damage to an individual; but there can be no provision made for damage, which is the result of a want of ordinary skill and caution in doing the work, as it cannot be anticipated. And this furnishes a strong argument for giving an action to recover damage.
 
 *78
 
 which is the result of a want of ordinary skill and caution ; although no action will lie, when the work is properly done ; and the individual must submit to the damage, unless his case is specially provided for. It is apprehended, that there was error in not adverting to this distinction in the decision of some of the cases which were relied upon in the argument, and to which attention will be called in the course of this opinion ; for which reason it has been dwelt upon somewhat at length.
 

 The jury has found, that the defendants did not use ordinary skill and caution in doing the work, and, as the plaintiff has been compelled to erect the walls, which proper skill and caution made it the duty of the defendants to have erected, in order to protect the lot from the effect of their act, it seems clear that she is entitled to recover. Suppose the case of two individuals : if one digs a ditch or cellar upon his own land, so as to cause the land of another to cave in, or walls of houses to- fall, he violates the maxim, “one must use his own so as not to do damage to another,” and is as clearly liable to an action, as one who erects a dam upon his own land and 1 hereby ponds the water back upon that of another. The defendants insist, that, if the plaintiff had a cause of action, it is against them as individuals, and not in their corporate capacity, for, as they contend, a corporation cannot be sued in “tort.”
 

 It is true, that it was formerly so held, and the reason given in the books is, that the usual process in an action of
 
 lort,
 
 to-wit, the
 
 capias ad
 
 respondendum, could not be served upon a corporation. The law, however, has been settled to the contrary, and the idea, that corporations are less accessible, and less responsible to actions than individuals, (which, by the bye. was one reason why corporations have always been looked upon by the public with so much jealousy and so little favor,) has yielded to common sense, and has been held, ever since the case of
 
 Yar
 
 
 *79
 

 borough
 
 v.
 
 The Bank of England, 10
 
 East.
 
 6,
 
 when the matter underwent a full discription, and all the objections to the action were satisfactorily disposed of, that corporations were as liable as individuals to be sued in contract or in tort, or to be indicted.
 

 In the United States, the liability of corporations to actions of tort is well settled ; indeed the charters of al[ corporations in this State, provide for the manner and name in which they shall sue and be sued, and no distinction is made between actions in contract and in tort.
 

 We think the plaintiff had her election to sue the corporation, who did the work, or to sue the defendants as a corporation, in which capacity they procured the work to be done, and are liable for the damage done by their agent, under the rule
 
 respondeat superior.
 
 A superior is not liable for the wilful act of his agent, but is liable for the damage resulting from a want of skill and due caution in doing the work.
 

 If the work be done according to the directions of the superior, and the agent is sued and pays damage, he has his redress against the superior ; if the work is done contrary to the directions of the superior, and the superior is sued and pay's damage, he has
 
 his
 
 redress against the agent.
 

 It is not necessary to decide whether the action could have been maintained against the defendants as individuals. Certainly it is better for the defendants to be sued as a corporation ; for the question, how far they have a right to pay the damage out of the funds of the corpora* tion, will be presented in a more favorable point of view, than if they had been sued as individuals.
 

 The defendants further insist, that, admitting that the plaintiff could maintain an action for the damage supposed, against a private corporation, as a rail road or canal company, yet no action will lie against them, they being a municipal or public corporation, for an exercise
 
 *80
 
 of the power vested in them by the sovereign authority, ior the convenience of the public; and contend for this distinction, because, in the former case, the act is done for the benefit of the private corporation, to enable it to make money for the individuals composing the corporation ; while in the latter the act is done for the benefit of the public at large. This distinction is taken in several cases cited in the argument for the defendants, and appears at the first suggestion to be plausible, but will not bear examination, and is more fanciful than real.
 

 The inducement on the part of the sovereign to grant the power, is, in both cases the benefit which the public will derive. The inducement on the part of the grantees, to solicit and accept the grant of the power, is, in
 
 both cases,
 
 the benefit which the grantees will derive.
 

 When the sovereign grants power to a private corporation, to construct a rail road, the grant is made for the public benefit, and is accepted because of the benefit which the corporation expects to derive by making money. So when the sovereign grants power to a municipal corporation to grade the streets, the grant is made for the public benefit, and is accepted because of the benefit which the corporation expects to derive, not by making money directly, but by making it more convenient for the individuals composing the corporation or town, to pass and repass in the transaction of business, and to benefit them by holding out greater inducements for others to frequent the town and thereby add to its business. The only distinction then, is, that in the one case money is received directly ; in the other, indreclly; but in both cases the individuals, composing, the stockholders, and the citizens of the town, derive special benefit from the work, which is not shared in by the citizens of the State, and; fog-this reason, the corporation, in both cases, is at the
 
 expense of making the work,
 
 and this is the surest test, by
 
 *81
 
 which to find out for whose special benefit the work is. done.
 

 The proposition contended for, on the part of the defendants, is, that a public or municipal corporation is not liable to an action, for doing a work, which the law au-thorises to be done, and that individuals, sustaining loss thereby, have no redress, imless the lav/ provides for compensation. This proposition is admitted, with the qualification,
 
 provided the work is done in a proper manner,
 
 and the only question is, is the proposition to be
 
 thus qualified?
 
 It has been already suggested, as a reason for requiring the qualification, that compensation can be provided for loss, necessarily resulting from the work, as taking land for the location of a road or other loss which will result, if the work be done in the most proper and skilful manner, whereas compensation cannot be provided for loss resulting from a want of skill and caution, for a want of skill and caution cannot be anticipated, at all events, the degree in which it will be wanting, cannot be known; it was also suggested, as a reason for requiring the qualification, that the distinction attempted to be drawm between a private and a public corporation by which the one may be made liable in such case and the other not, was not tenable. It is now added, and seems to be conclusive in favor of the qualification, that the grant to do the work necessarily implies a condition, that the
 
 work is to be done in a skilful and proper manner,
 
 so that if the work be not done with ordinary skill and caution, the corporation has not acted in pursuance of the power vested in 'it; its act is not lawful, but is wrongful, and the damage sustained by an individual is *•dam«.
 
 num et injuria,”
 
 for which an action wall lie. By way of illustration, power is given to a corporation to grade a street, by making an embankment across a valley, through which a small branch runs; is it not implied that the work is to be done in a skilful and proper manner by making
 
 *82
 
 a culvert, through which the branch can discharge itself ? or is the power unconditional, to make the embankment in any way that the corporation may see proper, to fill up the bed of the branch, make no culvert, and leave the water to pond back upon the lots above, unless the owners choose to be at the expense of making a culvert, even if it be lawful for them to do so, by interfering with a work which the sovereign has made it lawful for a municipal corporation to erect ?
 

 ■ The bare statement of such a case is a sufficient argument for requiring the qualification, and yet it is, in effect, the case we have under consideration, and we would without hesitation, decide in favor of the qualification upon the reason of the thing, unless the authorities have settled the law to the contrary too clearly to allow of such a decision.
 

 The authority, mainly relied on as being directly in point, is a decision in the State of New York.
 
 Wilson
 
 v.
 
 the Mayor,
 
 &c.,
 
 of the City of New York,
 
 1 Denio, 595. it is admitted that this case, if correctly decided, is in point, but with proper respect we conceive that the decision was erroneous, and that it is not supported by the case of the
 
 Governor,
 
 &c.,
 
 of Cast Plate Manufacturers
 
 v.
 
 Meredith,
 
 4 Term Rep. 796, upon which the Court base their opinion. The error, it seems to us, is in holding that the power- to do an act is unconditional
 
 •,
 
 whereas we think there is always a condition implied, that the work shall be done properly. The case was: the plaintiff owned' a lot at the intersection of 40th street and the 7th avenue; the defendants having power to raise and grade the street and avenue, raised them eighteen inches,.
 
 without making any drain or sewer,,
 
 whereby the water from the street and avenue, and the adjacent lots, flowed upon the. plaintiff’s lot and there remained in a pond, and could not flow off, because of the obstruction presented by the street and avenue so raised, and for the want of a
 
 *83
 
 drain or sewer. The plaintiff in his declaration alleged, that the work was done carelessly, and proved the facts, as above stated. The Court was of opinion that the action could not be sustained and the plaintiff was non-suited, assuming the broad ground, that the corporation was not liable for damage done to individuals, in the exercise of its power to raise and grade the streets, and without leaving the fact to be decided by the jury, whether the work had been done “carelessly,” and with a want of ordinary skill and caution, of which we think there was full proof.
 

 The case of the
 
 Governor,
 
 &c. v.
 
 Meredith,
 
 4 Term Rep 796, upon which the above case is made to rest, was this : The plaintiff owned a lot on High Ground street, upon which he had three ware-houses, with an arch and gateway under one of them, leading from the street under and through into his yard behind, and used it for loaded wagons to pass from the street into the yard, for which purpose it was of sufficient height. The defendants, who acted under the authority of the commissioners of the town, who were authorised to raise and grade the streets by an act of Parliament, and who had previously taken a level and decided upon the height to which it was necessary to raise the street opposite the ware-house and gate-way of the plaintiff, in strict pursuance of their directions, raised the street 2 feet and 1 inch ; whereby the gate-way of the plaintiff was made so low above the street, that loaded wagons could not enter as before, and it became necessary to unload the wagons in the street and carry the articles through to the back yard. The arch could not be made higher without injury to the house. The special case, made after a verdict for the plaintiff, stated, as facts agreed, the facts above and also this further fact: That the height to which the street was raised opposite ^plaintiff’s gate, was necessary to make a regular inclined plane with a fall of one foot in
 
 *84
 
 seventeen, and “the work could not be
 
 effected
 
 if done in
 
 any other way.
 
 The line, so made, was necessary and proper, and any alteration of the inclined surface of the street
 
 less material,
 
 was not sufficient to render the
 
 street safe
 
 for carriages.”
 

 Lord Kenyon held, that neither the defendant nor the commissioners were liable for doing the work, although the plaintiff was thereby damaged, and put his decision upon this ground: “It does not seem to me, that the commissioners acting under this act, have been guilty of any
 
 excess of jurisdiction.”
 

 Buller, Judge, put his decision upon the ground, that the act gave a particular remedy, by making provision for compensation, but inclined to concur with the Chief Justice, that the plaintiff would have been without remedy, if no provision for compensation had been made ; concluding “that if the thing complained of was lawful, no action can be sustained against the party doing the act. In this case, express power was given to the.commissioners to raise the pavement, and, not having exceeded their power, they are not liable to an action for having done it,”
 

 Grove, Judge, put his decision upon the provision for compensation, and expressed no opinion on the general question.
 

 So that in this case the work was properly done, and no want of ordinary skill and caution was alleged. And the case of
 
 Wilson
 
 v.
 
 the Mayor,
 
 &c.
 
 of New York City,
 
 is placed in this predicament. If the work was properly done, then it is sustained by the above case, upon which it professes to be grounded ; but is not in
 
 point
 
 as an authority in the case now under consideration, where a want of ordinary skill and caution is expressly found by the jury. But if the work was
 
 not
 
 properly done, then, although in point, yet it is not sustained by the case above stated.
 

 
 *85
 
 The case of
 
 Bailey
 
 v.
 
 the Mayor, &c. of the City of New York,
 
 decided in the Supreme Court of that State, and reported 3 Hill 531, and again decided in “The Court for the correction of errors,” reported 2 Denio, 433, was also cited, not as a case in point, for the decision was against the corporation, but as recognising the exception, contended for, in favor of Municipal Corporations, by putting the case upon special grounds, which, in the opinion of the Court, made it an exception to the general rule.
 

 The case was, that the plaintiff owned land, mills,
 
 &,c.f
 
 on Croton river, below the point where the defendants had caused a dam to be erected to turn the water out of the river, for the purpose of taking it to the City, in pursuance of powers vested in them by the Act of the Legislature : A freshet in the river carried away the dam and caused great damage to the plaintiff, by washing away his land, mills, &c. The plaintiff, in the Court below, offered to prove that the dam was negligently, un-skilfully, &c. constructed, by reason of which the dam was swept away, &c. The Judge below rejected the evidence and directed a non-suit. Upon an appeal to the. Supreme Court, a new trial was granted ; the Court being of opinion that, although as a general rule, a municipal corporation is not liable to the action of an individual for acts done under a power vested in it by law, yet this case formed an exception, for although the public might derive a common benefit from the erection of the work, still the grant of the power was made for the private advantage and emolument of the corporation, inasmuch as the water was to be sold ; and so the corporation was liable as an individual or a private corporation would be. Upon the second trial, the same facts being proved, the jury found for the plaintiff and assessed dam« age to $62,888 73. The case was then taken to the Court for the correction of errors, where the decision of
 
 *86
 
 the Supreme Court was affirmed, and the Court, admitting as a general rule that a municipal corporation is not liable to the action of an individual for acts done under a power vested in it by law, was of opinion that this case formed an exception ; not upon the ground taken in the Supreme Court, for making it an exception, but upon a distinct and different ground: that the corporation owned the land, upon which the dam was erected, and was, therefore, liable for its improper construction. In both Courts, it was taken for granted, that the work was not properly done, and instead of coming to the same conclusion upon grounds so distinct and different, the two-Courts might safely have adopted the common ground, that an Act, which gives power to a corporation to do a certain work, implies that the work is to be done properly; and hence, a corporation, whether private or municipal, whether the act is done with a view to the receipt of money directly, or only for indirect or collateral advantages, and whether the land belongs to the corporation,'or is only to be used and kept up as streets, in any and all of these cases, is liable for any damage resulting from a want of ordinary skill and caution in doing the work ; although it is not liable, when the work is properly done and in strict pursuance of the power vested in it, for any damage, which necessarily results from the work, and does not depend upon the
 
 manner
 
 in which it is done. In such cases, individuals must submit to the loss,
 
 “salus populi suprema est
 
 lexwffiich maxim, softened down, means that the interest of individuals must give way to the accomodation of the public. But as the maxim is somewhat harsh in its mildest sense, we are not disposed to extend its application, especially when no provision is made for compensation.
 

 Per Curiam» J udgmentaffirmed.